

**SIGNED this 17 day of May, 2005.**

_____

**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| MARCO SANTOS MORIN & JUANITA PACHECO MORIN | 04-50145-C |
| *DEBTORS* | CHAPTER 13 |

### DECISION ON REQUEST FOR ATTORNEYS' FEES

The debtors filed a motion to modify their chapter 13 plan, and application for attorneys' fees. The

motion drew an objection which was originally heard on December 13, 2004. The modification sought to

incorporate post-petition mortgage payment defaults into the plan, in response to an earlier motion to lift

stay, filed by the debtors' residential mortgagor, Washington Mutual Bank, F.A. The granted the request

for modification, but reset the application for additional attorneys' fees. There also remained pending the

debtor's separate application for compensation for having to respond to the mortgage creditor's motion

for relief from stay (which motion ultimately resulted in the debtors' seeking plan modification). This

request was heard on May 12, 2005.

Between these two settings, the court issued a separate decision in another case, *In re Balderas*, Bankr. Case No. 02-55740-C, addressing in much greater detail the many questions surrounding post-confirmation attorneys' fees in chapter 13 cases. The court adopts here the reasoning and legal conclusions set out in that decision., in support of the ruling in this decision.

The facts as they appear from a review of the court's docket in this case are as follows:

The petition was filed on January 5, 2004, under chapter 13. A plan and schedules were filed with the petition. The plan was confirmed on April 8, 2004, without objection. In July, the home mortgage creditor filed a motion for relief from stay, alleging post-petition payment defaults, totalling approximately 5 months' worth of post-petition mortgage payments (meaning that the debtors were already in default on their post-petition mortgage payments when the plan was confirmed). The motion was set, then reset, then an agreed order was finally submitted in October, providing for the cure of arrearages and self-enforcing default provisions. The cure included incorporating some of the arrearages into the plan via a modification to the plan. Counsel sought an award of $500, payable out of the next plan distribution, in payment for services rendered responding to the motion to lift stay. Because the plan payments were only $255 per month, this fee award would have consumed the next two months' of plan payments. These plan payments would have included a payment of $85 a month to counsel for fees awarded in the plan, so when the following month's plan payment were paid, the entire month's payment would be distributed to counsel as well (three times $85, being the distribution due that month, plus the previous two months not paid as a result of the previous two months' payment being used to pay the post-confirmation fee awarded on the application for additional fees). The application was not approved, because it drew an objection from the chapter 13 trustee.

The debtors' counsel filed a motion to modify the plan to include some of the post-petition mortgage arrearages (as earlier noted). The modification also sought to raise the plan payment to $275. This motion also included a request for an additional award of attorneys' fees, also in the amount of $500, to be paid from next distribution. If granted, this request would have the same impact on distributions to other creditors as would have the award of fees for responding to the motion to lift stay. This application too drew an objection from the chapter 13 trustee, who asserted the same concerns regarding the impact on distributions to other creditors. The court held a hearing, focused primarily on the attorney fee request, but granted the underlying modification to the plan. The court also ruled that counsel could recover $500 for the preparation of the modification, but withheld ruling on the manner in which those fees should be paid.

Had the fees been awarded as originally requested, the total of fees for debtor representation would be $2,800, all incurred before the first year of the case had been completed. Only the debtors' failure to stay current on their statutory obligation to maintain their post-petition mortgage payments current caused the additional services to need to be rendered. According to the original schedules filed in the case, the debtors had sufficient income to both pay their mortgage and make their plan payments, and the chapter 13 trustee determined to his satisfaction that those representation were accurate as of the first meeting of creditors. No one advised either creditors or the chapter 13 trustee at confirmation that, in fact, the debtors were *not* capable of keeping these payments current. The agreed order on the motion for relief from stay indicated that the post-petition arrearages actually incurred were *higher* than alleged in the motion.

Thus, there was a fairly radical disconnect between what the debtors said they were capable of doing in their plan and in their original schedules, and what they were in fact capable of doing on the ground. It cannot be suggested that the cost of repairing this disconnect should, in equity, be imposed on

the creditors of this estate, none of whom had any knowledge of the disconnect, or anything to do with the

default. In *Balderas*, the court ruled that section 330(a)(4) requires that the court consider "other factors"

in awarding fees to debtor's counsel in a chapter 13 case, including factors such as whether the services

were necessary to the administration of the case or beneficial toward the completion of the case. There

is no doubt that the services were necessary to the debtors, lest they lose their home. That alone does not

make those services necessary to the administration of the case or beneficial from the point of other

creditors of the estate. The other factors, in short, militate against an award.

By the same token, the debtors, having defaulted and thus facing imminent loss of their home if they

did not respond to the motion for relief from stay, had to have the assistance of counsel if they were going

to save their house. That demanded, in this case, both a response to the motion to lift stay and a plan

modification to incorporate some of the arrearages. Those services were in fact rendered both promptly

and competently, and with a good result for the debtors.

The court in *Balderas* ruled that in the future, the base fee awarded should be presumed to include

representing the debtor in response to one motion to lift stay with respect to the debtor's residence, with

provision for an additional award upon a showing of extraordinary circumstances as set out therein.

However, the court also ruled that, in the event of changes in the debtor's life circumstances, counsel could

nonetheless request fees for responding to a post-petition mortgage default, upon a proper showing. The

facts of this case do not demonstrate any particular change in the debtor's life circumstances, other than

that the debtors simply could not actually live with the budget upon which confirmation of their plan was

premised. Thus, the fees sought here for responding to the motion to lift stay are not justified under

*Balderas*. Nor, in fact, are they justified under section 330(a)(4).

In *Balderas*, the court ruled that a unitary approach should be taken to the award of fees incurred in responding to a motion for relief from stay precipitated by the debtors' failure to remain current on their post-petition mortgage payments. Here, the debtors filed a response to the motion to lift stay, agreed to cure some of the post-petition arrearages immediately, and agreed to repay the balance by incorporating them into the plan. This last part of the agreement, required the debtors to obtain a plan modification. The court has already approved the fee request of $500 sought in the motion to modify (reserving only the manner of repayment). The application for compensation for responding to the lift stay motion remains. Following *Balderas*, the court here applies a unitary approach and rules that a total award of $750 is appropriate for responding to the mortgage default. As $500 has already been awarded, an additional award of $250 for the motion to modify is allowed by this order.

The court also rules that the manner of repayment of these fees should be consistent with the directives set out in *Balderas*. Accordingly, the fees allowed shall be distributed out of plan payments at the rate of $100 a month until paid, with remaining claims (including the fees awarded to counsel in the original confirmation order) paid *pro rata* with the balance of the plan payment. After the post-confirmation fees are paid in full, the plan payment will once again be used to satisfy original claimants as provided in the plan, without the "catch-up" on distributions on account of the fees awarded at confirmation which has been the rule in the past. In other words, the payout on those fees will be pushed back as a result of the distribution of post-confirmation fees awarded, just as is the payout to other creditors.

A separate order consistent with this decision will be entered.

# # #